UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

EVAN MORICH,

        Petitioner,

v.

CONNIE HORTON,

        Respondent.
_____/

Case No. 2:19-cv-136

Honorable Paul L. Maloney

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.  **Factual allegations**

Petitioner Evan Morich is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. On March 16, 2016, a Monroe County Circuit Court jury convicted Petitioner of armed robbery, in violation of Mich. Comp. Laws § 750.529; unlawful imprisonment, in violation of Mich. Comp. Laws § 750.349b; felon in possession of a firearm, in violation of Mich. Comp. Laws § 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On April 28, 2016, the court sentenced Petitioner as a habitual offender-fourth offense, Mich. Comp. Laws § 769.12, to concurrent prison terms of 30 to 70 years for armed robbery, 15 to 30 years for unlawful imprisonment, and 6 to 9 years for felon in possession. Those sentences were to be served consecutively to a sentence of 2 years for the felony-firearm violation.

On June 27, 2019, Petitioner timely filed his habeas corpus petition raising two grounds for relief, as follows:

I. The evidence was insufficient to support the convictions for felon in possession and felony firearm.

II. The trial court erred with regard to the scoring of OV-1, OV-2, OV-4, OV-8, and OV-10.

(Pet., ECF No. 1, PageID.1, 14, 16.) Petitioner raised the same issues in the Michigan appellate courts when he appealed his convictions and sentences.

The Michigan Court of Appeals described the underlying facts as follows:

[Petitioner] met [the victim Thomas] Melcer in the winter of 2015 while both were utilizing services at Monroe Community Mental Health. [Petitioner] introduced Melcer to his girlfriend, Honi Werner, and Melcer and Werner also became friends. Melcer has a seizure disorder and impairments requiring him to use a cane. Due to these conditions, Melcer is unable to drive. On the afternoon of August 6, 2015, Melcer asked Werner to drive him to a local pharmacy to refill his prescriptions. Melcer testified that afterward, Werner invited him over for dinner. Upon arriving

2

> at Werner's home, [Petitioner] appeared and asked Werner to drive him to Detroit to buy some heroin. [Petitioner] and Werner left, leaving Melcer alone at Werner's house. Werner described, however, that Melcer had prearranged a visit to Werner's house after the pharmacy so that he could sell his prescription medications to [Petitioner].
>
> Werner testified that she took [Petitioner] to a house near Detroit to purchase drugs. During this trip, [Petitioner] told her that he intended to rob Melcer upon their return. [Petitioner] took from the Detroit house a ski mask, dark blue work pants, black work boots, "and what [Werner] believe[d] . . . was a shotgun" encased in cardboard. The pair stopped at a gas station where [Petitioner] changed his pants and shoes and put on a hoodie and ski mask. [Petitioner] ordered Werner to go for a drive before returning home. [Petitioner] took the shotgun and walked the rest of the way.
>
> Melcer described that at approximately 8:30 p.m., a man wearing a mask entered Werner's house through the back door and pulled a shotgun out of a box. Melcer identified [Petitioner] as his assailant by his voice and build. [Petitioner] hit Melcer with the barrel of the gun and ordered him to go down to the basement. [Petitioner] held Melcer in the basement for an extended period. He tied Melcer up and pulled his shirt over his head. Once [Petitioner] believed Melcer's vision was impaired, he removed his mask. Melcer could see through his shirt, however, and positively identified [Petitioner] as his assailant. [Petitioner] poked Melcer with the gun and threatened to kill him and his family if he called the police. [Petitioner] then took Melcer's medications and wallet, which contained $1,150 in cash, credit cards, and a food card. He placed his loot into a bag.
>
> Werner returned home in the midst of Melcer's imprisonment. [Petitioner] pretended to threaten her but then gave her the bag of stolen items. Werner claimed that an unknown man was also in the basement and she handed him the bag. Werner drove this man to his house and when she returned, [Petitioner] was gone. Melcer asked Werner to take him to the hospital. She did not want to, but she dropped him off and drove away.

*People v. Morich*, No. 332970, 2017 WL 4557016, at *1 (Mich. Ct. App. Oct. 12, 2017).

Petitioner's claims here, and in the court of appeals, are based upon his contention that there was insufficient evidence that he possessed a firearm during the crime. The court of appeals reported that the victim described Petitioner's weapon "as a 'Remington 870 12 gauge shotgun[.]'" *Id*. at *2. That statement, however, was not the only evidence regarding Petitioner's possession of a firearm:

3

> Melcer saw the masked man "pull[ ] out a shotgun out of the box" immediately upon entering the room. Melcer was in close proximity to the man and "g[o]t a decent look at this gun." Based on his long experience as a hunter, Melcer identified the weapon as a shotgun. Its barrel was approximately one-half inch in diameter, much too large to propel BBs or air gun pellets. The masked man struck Melcer in the face with gun's barrel and placed the barrel against the back of his head. Melcer was able to feel the sturdy frame of the gun's barrel, which was more consistent with a shotgun than a BB or pellet gun. Ultimately, Melcer was able to identify the brand of weapon based on the sound it made when racked. Again based on his decades of hunting experience, Melcer described that a cheaper shotgun brand makes a rattling noise when racked while a Remington makes a smooth click. Melcer's identification of the manufacturer, model, and gauge number of the weapon are the types of details that could lead a reasonable juror to credit his testimony.
>
> Further, Werner testified that defendant took what she believed was a shotgun from the basement of the Detroit house. When asked why she thought it was a shotgun, she responded, "Because it was a gun and it was long and it was black."

*Id*. Petitioner does not claim that the court of appeals' description of the trial evidence is inaccurate. Indeed, Petitioner's description of the testimony of Melcer and Werner includes all of the details referenced by the appellate court. (Pet'r's Memo. of Law, ECF No. 1-1, PageID.8-13.)

The Michigan Court of Appeals rejected Petitioner's claims in an opinion issued October 12, 2017. Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court. By order entered April 3, 2018, that court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Morich*, 909 N.W.2d 237 (Mich. 2018). This petition followed.

## II. AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any

4

claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v Rodgers*, 569 U.S. 58, 64 (2013); *Parker v Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy

this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Sufficiency of the evidence

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine

6

the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In resolving Petitioner's sufficiency challenge, the Michigan Court of Appeals applied the following standard:

> We review de novo challenges to the sufficiency of the evidence, viewing the evidence in the light most favorable to the prosecution to determine if a rational jury could find the offense elements proven beyond a reasonable doubt. *People v. Wolfe,* 440 Mich. 508, 515; 489 N.W.2d 748, amended on other grounds 441 Mich. 1201 (1992).

(Mich. Ct. App. Op., ECF No. 13-18, PageID.1570-1571.) Although the court of appeals relied on state authority for the sufficiency standard, the standard it applied is functionally identical to the *Jackson* standard. The court of appeals applied the standard by reviewing the testimony regarding Petitioner's possession of a firearm, just as *Jackson* requires.

Petitioner faults the state appellate court's conclusion because "[n]o gun was found" and [i]t was just as likely [the weapon] was a gas or bb gun incapable of propelling a

7

projectile" as required by state statute. (Pet'r's Memo. of Law, ECF No. 1-1, PageID.15-16.) To the extent Petitioner's argument is directed to challenging the state court's identification of the elements—specifically the definition of a firearm—it is not cognizable on habeas review. *Jackson* makes clear that state law determines the elements. *Jackson,* 443 U.S. at 324 n.16. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (observing that the Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law") (internal quotations and citations omitted). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit counsels "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same). Therefore, this Court is bound by the state court's conclusion that the weapon described in Melcer's and Werner's testimony falls within the definition of a firearm under state law.

But that is not the crux of Petitioner's claim. The crux of Petitioner's claim is that one might view Melcer's and Werner's testimony regarding the weapon and still conclude that the weapon was a gas gun, a bb gun, or even a "replica gun[.]" (Pet'r's Memo. of Law, ECF No. 1-1, PageID.16.) Petitioner makes this claim not based on evidence to support the conclusion that the weapon *was* a gas gun, a bb gun, or a replica gun, but on the theoretical possibility that it *might have been*.

Petitioner's argument turns the *Jackson* standard on its head. Petitioner invites this Court to view the evidence in a light that favors him or to draw inferences from the evidence that

8

favor him. Petitioner's argument utterly and completely fails to demonstrate that the Michigan Court of Appeals' resolution of his sufficiency argument—a resolution that views the evidence in a light that favors the prosecutor and rightfully leaves to the jury the drawing of reasonable inferences—is contrary to, or an unreasonable application of, the clearly established federal law set forth in *Jackson*. Accordingly, he is not entitled to habeas relief on his sufficiency claim.

## IV. Guidelines scoring

Petitioner contends that the trial court erred in scoring Offense Variables (OVs) 1, 2, 4, 8, and 10 when the court calculated Petitioner's minimum sentence range. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Petitioner's claim is a garden-variety state-law sentencing error claim; but, the claim strays close to the boundaries of a constitutional claim cognizable on habeas review when

9

he argues: "Defendants are entitled to be sentenced based upon accurate information." (Pet'r's Memo. of Law, ECF No. 1-1, PageID.16.) Even though application of the sentencing guidelines is a state-law issue, a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information. With respect to OVs 1 and 2, Petitioner claims, for the reasons set forth above with regard his insufficient evidence claim, that there was no evidence Petitioner pointed a firearm or used a rifle. (Pet'r's Memo. of Law, ECF No. 1-1, PageID.17-18.) The state appellate court rejected the claim based on the testimony of Melcer and Werner. *Morich*, 2017 WL 4557016, at *3. The claim, as Petitioner has raised it, is only a state-law claim. It is not cognizable on habeas review.

Section 777.34 of the Michigan Compiled Laws, OV4, calls upon the sentencing court to score 10 points if there is serious psychological injury to a victim requiring professional

10

treatment. The Michigan Court of Appeals upheld the trial court's assessment of 10 points based on the following evidence:

> [T[he victim impact statement indicates that Melcer is "in constant fear for his life and that his sense of security and trust in others has been shattered since this crime." Although he "continue[d] engaging in mental health services through Community Mental Health" rather than starting new services, Melcer was "presently addressing these new issues in tandem with his previously diagnosed conditions."

*Morich*, 2017 WL 4557016, at *3. Petitioner objects, not because that evidence is false, but because the evidence appeared in the pre-sentence investigation report, the victim did not testify at sentencing, and no documents regarding the treatment were offered into evidence. (Pet'r's Memo. of Law, ECF No. 1-1, PageID.18.) The claim, as Petitioner has raised it, is merely a state law claim regarding what evidence is admissible at a sentencing hearing. It does not implicate the protections of due process[1] and is not cognizable on habeas review.

Section 777.38 of the Michigan Compiled Laws (OV8) requires a sentencing court to assess 15 points if the victim is asported to a place of greater danger. The Michigan Court of Appeals concluded that Petitioner asported Melcer to a place of greater danger when Petitioner forced Melcer to a small room in the basement, thereby "increasing his level of isolation from the observation of others." *Morich*, 2017 WL 4557016 at *3. Petitioner does not claim that the trial court's score, or the appellate court's approval of it, was based on false information. Rather, he claims that it is speculative to suggest that the basement was any more dangerous than the first floor of the home. (Pet'r's Memo. of Law, ECF No. 1-1, PageID.19.) Petitioner's argument

---

[1] Even though Petitioner's claim, read liberally, complains that he was sentenced based on inadmissible hearsay, it does not implicate the Confrontation Clause either. The federal courts long have recognized that "[a] sentencing hearing . . . is not a criminal trial, and many of the constitutional requirements of a criminal trial do not apply to sentencing." *United States v. Hamad*, 495 F.3d 241, 246 (6th Cir. 2007) (citing *Williams v. New York*, 337 U.S. 241, 251 (1949)). "The right to confront adverse witnesses and to prohibit the introduction of testimonial hearsay without cross-examination does not apply at sentencing." *Hamad*, 495 F.3d at 246 (citing, *inter alia, Williams v. Oklahoma*, 358 U.S. 576, 584 (1959) ("The type and extent of [sentencing] information make totally impractical if not impossible open court testimony with cross-examination.") (applying the Due Process Clause at a time when the Court had not yet incorporated the Confrontation Clause)).

challenges only the state courts' application of the sentencing guidelines, not the accuracy of the underlying facts; therefore, the claim is not cognizable on habeas review.

Finally, Mich. Comp. Laws § 777.40 requires the sentencing court to assess 15 points if the defendant engaged in predatory conduct: "preoffense conduct directed at a victim . . . for the primary purpose of victimization." Mich. Comp. Laws § 777.40(3)(a). The Michigan Court of Appeals concluded that the trial court's assessment of 15 points against Petitioner was appropriate based on the following evidence:

> Melcer was taken to Werner's house and remained there while defendant and Werner drove to Detroit. In Detroit, defendant told Werner that he intended to rob Melcer once they returned, and he obtained a shotgun and different clothes for the specific purpose of carrying out this plan. "The timing of an offense, including watching the victim and waiting until the victim is alone before victimizing him or her, may be evidence of predatory conduct." *Kosik*, 303 Mich. App. at 160. Here, defendant knew that Melcer was alone at Werner's house. Melcer explained that he does not drive because he experiences seizures, which means he was effectively stranded in the home. Defendant ordered Werner to go for a drive before she returned to her house, presumably because he wanted to rob Melcer without Werner being there. This constitutes preoffense conduct directed at Melcer for the primary purpose of his victimization, supporting the score.

*Morich*, 2017 WL 4557016, at *4. Petitioner does not challenge the accuracy of any of the facts upon which the appellate court relied. Instead, he claims the state court engaged in speculation when it concluded that the described facts constitute predatory preoffense conduct. (Pet'r's Memo. of Law, ECF No. 1-1, PageID.19-20.) Petitioner's claim does not implicate his due process rights; it is merely a state law claim regarding proper application of the sentencing guidelines. It is not cognizable on habeas review.

## **Conclusion**

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . .

13

jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.


Dated:  August 9, 2019                                      /s/ Paul L. Maloney
                                                                                     Paul L. Maloney
                                                                                     United States District Judge